Stephen **HICKEY**, Plaintiff,

v.

**VOXERNET LLC**, a Delaware corporation; Tom Katis, an individual; John Doe, an unknown person, Defendants.

**Case No. C12–373 MJP.**

United States District Court, W.D. Washington, at Seattle.

Aug. 13, 2012.

Albert H. Kirby, Kirby Law Group, Cindy M. Lin, Donald W. Heyrich, Heyrich Kalish McGuigan PLLC, Seattle, WA, for Plaintiff.

Bradley T. Meissner, Brian D. Buckley, Jeffrey A. Ware, Fenwick & West, Seattle, WA, for Defendant.

## ORDER ON DEFENDANT'S MOTION TO DISMISS

MARSHA J. PECHMAN, District Judge.

This matter comes before the Court on Defendant's motion to dismiss (Dkt. No. 14.) Having reviewed the motion, the response (Dkt. No. 16), the reply (Dkt. No. 18), and all related filings, the Court DENIES in part and GRANTS in part Defendant's motion to dismiss Plaintiff's federal and state law causes of action with leave to amend.

## Background

"Voxernet" is a software application that transforms a user's cellular phone into a walkietalkie. (Dkt. No. 14 at 7.) Plaintiff pursues federal and state consumer protection claims against Defendant Voxernet arising out of its alleged use of Voxer subscribers' cell phone contact lists to send text messages advertising Voxer. (Dkt. No. 11 at 3.) The proposed class action was filed in state court and removed to this Court pursuant to the Class Action Fairness Act.

Plaintiff alleges that in December 2011, he received an unsolicited text message transmitted by or on behalf of Voxernet using an automatic telephone dialing system ("ATDS"). (Dkt. No. 11 at 5.) The message told Plaintiff to "Get on Voxer" and provided him a link to where he could download Voxer. (*Id.* at 5.) Plaintiff believed that the message was from one of his contacts trying to contact him. (*Id.*) Plaintiff argues that Voxer is similar to a predictive dialer and that Voxer will send advertisements in an automated manner to cell phone numbers. (*Id.* at 3.)

Plaintiff alleges that the text messages are commercial solicitations that are meant to elicit valuable consideration from consumers. (*Id.*) Plaintiff claims that he was injured as a result of the text message due to associated phone charges, the depletion of his cell phone data capacity, invasion of privacy and the annoyance of receiving unsolicited text messages. (*Id.* at 6.)

Plaintiff seeks to represent on behalf of a national class under federal law and a Washington State subclass under Washington law anyone who has received "at least one unsolicited text message which marketed Voxer on behalf of Defendant." (*Id.* at 7.) Plaintiff pursues one cause of action under the Telephone Consumer Protection Act ("TCPA"), one under the Washington State Commercial Electronic Mail Act ("CEMA") as a per se violation of the Washington Consumer Protection Act ("CPA"), and requests damages and injunctive relief. Defendant moves to dismiss both causes of action.

## Analysis

### A. *Standard*

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). On a motion to dismiss, the Court accepts all well-pleaded allegations of material fact as true and draws all reasonable inferences in favor of the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys.*, 135 F.3d 658, 661 (9th Cir.1998). The complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). The complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955.

### B. *TCPA Claim*

Defendant seeks dismissal of Plaintiff's TCPA claim, arguing that (1) Plaintiff failed to allege Voxer sent the disputed text message, and (2) Plaintiff failed to adequately plead the use of an ATDS as defined under the TCPA. The Court finds neither argument persuasive.

#### 1. *Voxer's Transmission of the Text Message*

■■■ Plaintiff sufficiently alleges that Voxer sent a text message to his cell phone. The TCPA prohibits making "any call . . . using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A). A text message is a call under the TCPA. *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 954 (9th Cir.2009). Courts have found a "[Defendant] can be held liable even if it did not physically send the messages at issue" as long as Plaintiff plausibly alleges Defendant ultimately controlled sending the message. *In re Jiffy Lube Int., Inc. Text Spam Litigation,* 847 F.Supp.2d 1253, 1258–59 (S.D.Cal.2012).

Here, Defendant argues that because the text message may have been sent from Plaintiff's contact's phone, he has not sufficiently pled that Defendant sent him the text message. (Dkt. No. 14 at 12.) The Court disagrees. While Plaintiff's allegation does not raise questions of vicarious liability, the reasoning in *In re Jiffy Lube* applies since it considers a situation where a third party sends the actual text messages. The relationship between Defendant and Plaintiff's contact is currently unclear. That ambiguity is not fatal to Plaintiff's complaint, indeed it goes to the heart of the dispute. Plaintiff alleges that Voxer transmits automated text messages to lists of cell phone numbers that Voxer is given access to. (*Id.* at 3.) Plaintiff alleges sufficient details, such as the generic form of the message, which indicate that discovery will reveal evidence of Defendant's actual transmission or control of the message. Furthermore, other courts' willingness to expand liability under the TCPA despite the involvement of third parties in the transmission of prohibited communications indicates that potential third party involvement in sending the message in this case is not dispositive of Defendant's liability under the TCPA. Plaintiff has adequately stated his allegation that Defendant transmitted the disputed text Plaintiff has adequately stated his allegation that Defendant transmitted the disputed text message even if the details of the relationship between his contact and Defendant are currently unclear.

#### 2. *Voxer as an ATDS*

■■■ Plaintiff has adequately pled that Voxer uses an ATDS as defined under the TCPA. The TCPA defines "automatic telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). A predictive dialer is considered an ATDS under the TCPA. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act. of 1991,* 18 F.C.C.R. 14014, 14093 (2003). "A predictive dialer is . . . hardware, when paired with certain software, [which] has the capacity to store or produce numbers and dial those numbers . . . from a database of numbers." *Id.* at 14091. The FCC states that "the basic function of such equipment . . . [is] the capacity to dial numbers without human intervention." *In the Matter of Rules & Regulations Implementing the Te. Consumer Prot. Act of 1991,* 23 F.C.C.R. 559, 566 (2008). The FCC also noted that it expects "automated dialing technology to continue to develop." *Id.* Other courts have noted "the difficulty a plaintiff faces in knowing the type of call-

ing system used without the benefit of discovery" and found that courts can rely on details about the call to infer the use of an ATDS. *Knutson v. Reply!, Inc.*, 2011 WL 1447756 at *1 (S.D.Cal. Apr. 13, 2011).

Here, Plaintiff has pled with sufficient specificity how the Voxer application uses "equipment" or "hardware" under the statutory definition of an ATDS or predictive dialer. Voxer is a software application, but software operates in conjunction with some kind of "equipment." Plaintiff sufficiently alleges the involvement of cell phones in sending the disputed text messages. (Dkt. No. 11 at 3.) Plaintiff's allegation regarding the generic content and automatic generation of the message is sufficient to infer the use of an ATDS. Although the precise relationship between software and hardware is unclear at this stage of litigation, the Court recognizes the difficulty of alleging details about an ATDS before discovery. Plaintiff has, however, provided sufficient detail to make a plausible claim under the TCPA and to allow for discovery of further evidence related to Voxer's ATDS functionality.

### C. *CEMA Claim*

Plaintiff pursues a claim under CEMA, RCW 19.190.060, which is a *per se* violation of Washington's CPA, RCW 19.86.010. Defendant argues the CEMA claim is preempted by the TCPA and alternatively that it is inadequately pled. The Court finds the claim under CEMA is not preempted by the TCPA but agrees Plaintiff fails to state a claim.

#### 1. *Preemption*

Defendant argues that (1) the TCPA preempts CEMA by conflicting with the TCPA's regulatory scheme and (2) does not fall within the TCPA savings clause to the extent CEMA applies to interstate communications. (Dkt. No. 14 at 26.)

■■ Congress may preempt state law either explicitly or implicitly. *Whistler*

*Invs., Inc. v. Depository Trust & Clearing Corp.*, 539 F.3d 1159, 1168 (9th Cir.2008). The two forms of implied preemption are field preemption and conflict preemption. *Id.* Defendant does not argue that the TCPA expressly preempts CEMA or implicitly preempts it through field preemption. Unless federal law clearly intends otherwise, the Court should presume that state law is not preempted. *Wyeth v. Levine*, 555 U.S. 555, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009). Consumer protection is an area of traditional state authority creating a presumption against federal preemption. *Meilleur v. AT & T Inc.*, No. 11–1025 MJP, 2011 WL 5592647 at *3 (W.D.Wash. Nov. 16, 2011).

#### a. *Conflict preemption*

■■ The Court finds that Defendant has not shown a conflict between the TCPA and CEMA warranting preemption. "Conflict preemption analysis examines the federal statute as a whole to determine whether a party's compliance with both federal and state requirements is impossible or whether, in light of the federal statute's purpose and intended effects, state law poses an obstacle to the accomplishment of Congress's objectives." *Whistler*, 539 F.3d at 1164.

To determine if there is conflict preemption, the Court undergoes a two-step analysis. First, the Court asks whether it is impossible for Defendant to comply with both the TCPA and CEMA. *Id.* at 1166. In *Palmer*, the court found that because defendant had not demonstrated "its compliance ... would place it in direct noncompliance with the TCPA," that Washington's statute banning ATDSs did not conflict with the TCPA. *Palmer v. Sprint Nextel Corp.*, 674 F.Supp.2d 1224, 1230 (W.D.Wash.2009).

Here, CEMA states, "No person conducting business in the state may initiate

or assist in the transmission of an electronic commercial text message to a telephone number assigned to a Washington resident for cellular telephone or pager service that is equipped with short message capability or any similar capability" RCW 19.190.060. The TCPA prohibits making "any call . . . using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A). Defendant fails to demonstrate it cannot comply with the provisions of both the TCPA and CEMA. Indeed, the TCPA does not directly address the issue of intrusive commercial use of text message to cell phones. H.B.2007, 58th Leg., 2003 Reg. Sess. (WA 2003). Therefore, there are no conflicting regulations or prohibitions on text messaging that would prevent Defendant from complying with both statutes.

Second, the Court asks whether "under the circumstances of a particular case, the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby v. Nat'l Foreign Trade Council,* 530 U.S. 363, 373, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000) (citation omitted). Defendant argues that since CEMA applies to interstate commercial text messages, it impedes the federal regulatory scheme for interstate communications. (Dkt. No. 14 at 26.) Yet Congress intended the TCPA to strengthen, not weaken, the protection of citizens from intrusive telemarketing by reaching telemarketers evading state jurisdiction. Pub.L. No. 102–243, 105 Stat. 2394 § 2 (1992). CEMA is not an obstacle to the goals of the TCPA, but rather extends consumer protection by banning all commercial text messages to cell phones, leaving unimpeded the TCPA restrictions on the use of certain telemarketing devices to call residential lines. By regulating different methods of telephone solicitation and strengthening consumer protection,

CEMA actually furthers the goal of the TCPA. The Court finds conflict preemption does not apply.

b. *Savings Clause*

The TCPA contains a savings clause that explicitly sets forth the state laws not preempted by federal law. Based on the premise that any law not within the savings clause is preempted, Defendant contends (1) the savings clause only applies to state regulations or prohibitions on *intra* state communications and thus *inter* state applications of CEMA remain preempted and (2) even if it applied to laws prohibiting interstate communications, the savings clause does not apply to interstate *regulations.* The Court disagrees on both counts.

▇▇▇▇ First, Defendant incorrectly argues that the savings clause does not apply to interstate prohibitions on telephone solicitations. The savings clause of the TCPA states:

"Nothing in this section . . . shall preempt any state law that imposes more restrictive intrastate requirements or regulations on, or which prohibits—

(A) the use of telephone facsimile machines or other electronic devices to send unsolicited advertisements;

(B) the use of automatic telephone dialing systems;

(C) the use of artificial or pre-recorded voice messages; or

(D) the making of telephone solicitations."

47 U.S.C. § 227(e)(1). The word 'intrastate' in the savings clause modifies the first object, i.e., state law regulations or requirements. *Meilleur,* 2011 WL 5592647 at *4; *see also Hovila v. Tween Brands, Inc.,* 2010 WL 1433417 at *8 (W.D.Wash. Apr. 7, 2010). Therefore, while intrastate regulations are protected under the savings clause, intrastate prohi-

bitions are not. Regardless, 'intrastate' does not modify or apply to state law prohibitions. *Id.* In other words, the TCPA savings clause saves all prohibitions on telephone solicitations, whether intrastate or interstate. Since CEMA is a prohibition on telephone solicitations, the savings clause applies.

■ Second, Defendant argues CEMA is a regulation, not a prohibition, and that it is preempted to the extent it attempts to regulate interstate communication. This argument also fails. A regulation is defined as "the act or process of controlling by rule or restriction." Black's Law Dictionary (9th ed. 2009). To prohibit is defined as to "forbid by law." *Id.* Here, CEMA unambiguously forbids the sending of commercial text messages to cellular phones, a particular form of telephone solicitation. The statute is titled, "Commercial electronic text message—prohibition on initiation or assistance." RCW 19.190.060. CEMA does not attempt to control commercial text messages, but rather forbids them outright.

Since CEMA is a prohibition on interstate telephone solicitations and prohibitions on interstate telephone solicitations are within the savings clause, CEMA is included within the TCPA's savings clause and is not preempted.

#### 2. *Adequacy*

Defendant argues that Plaintiff fails to state a claim under CEMA because (1) Plaintiff has not adequately alleged Voxer initiated or assisted in the transmission of the message and (2) Plaintiff has not alleged the transmission of a commercial electronic message.

The Court finds Defendant's first argument fails. Under RCW 19.190.060, one may not "initiate or assist in the transmission" of a commercial electronic message to a Washington state resident. This issue is identical to the issue under the TCPA of whether Plaintiff adequately alleged Voxer

sent the disputed text message. As discussed above, the Court finds Plaintiff adequately pled Voxer initiated the transmission of the disputed text messages under CEMA.

■ Nevertheless, the Court finds Defendant's second argument persuasive. Plaintiff does not adequately allege the transmission of a "commercial electronic message." RCW 19.190.060 applies only to "commercial electronic text messages," defined as "an electronic text message sent to promote real property, goods, or services for sale or lease." RCW 19.190.010(3). The definition of sale includes "a price in money paid or promised." Black's Law Dictionary (9th ed. 2009). "A 'sale' consists in the passing of title from the seller to the buyer for a price." RCW 62A.2–106.

Plaintiff nowhere alleges that consumers pay money for Voxer. The intangible consideration that Plaintiff claims consumers give up to download Voxer, such as personal information, telephone data charges or agreement to pay to use Voxer if it begins to charge users in the future, does not render the transaction sufficiently "commercial" to create liability under RCW 19.190.060. (Dkt. No. 11 at 4.) Plaintiff does not remedy this deficiency by providing screenshots of the Voxer application download screen containing the word "purchasing" without any allegation of monetary transfer. (Dkt. No. 17–1 at 2.) Other courts have found that software updates cannot be considered sales where they are provided free of charge. *Wofford v. Apple Inc.,* No. 11–0034, 2011 WL 5445054 at *2 (S.D.Cal. Nov. 9, 2011). The situation here is similar to a software update because Voxer is also a piece of software that requires downloading onto the user's device. Since Hickey does not allege that downloading Voxer free of charge constitutes a "sale" rendering the disputed

text messages "commercial" advertisements, Plaintiff's CEMA claim is DISMISSED with leave to amend.

### Conclusion

The Court DENIES in part and GRANTS in part Defendant's motion to dismiss Plaintiff's complaint with leave to amend. The Court DENIES Defendant's motion to dismiss Plaintiff's TCPA claim because Plaintiff adequately pled Defendant transmitted the disputed message and pled the use of an ATDS under the TCPA. The Court GRANTS Defendant's motion to dismiss Plaintiff's CEMA claim because, even though the TCPA does not preempt CEMA, Plaintiff fails to state a claim. Plaintiff's amended complaint must be filed within 10 days of this Order. The clerk is ordered to provide copies of this order to all counsel.